UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
ALLSTATE   VEHICLE   AND   PROPERTY
INSURANCE COMPANY,

<table>
<tr><td>Plaintiff,</td><td>**MEMORANDUM AND ORDER**</td></tr>
<tr><td>- against -</td><td>2:20-cv-1558 (DRH) (AKT)</td></tr>
</table>

KRZYSTOF   MARS   and   DOROTA   MARS,
Individually   and   as   Parents   and   Natural
Guardians of M.M., an infant, and WILLIE
MOORE and URSULA MOORE, Individually and
as the Parents and Natural Guardians of D.W.M.
and D.D.M., infants,

Defendants.

-------------------------------------------------------------------X

**APPEARANCES**

**LEWIS JOHS AVALLONE AVILES, LLP**
Attorneys for Plaintiff
One CA Plaza, Suite 225
Islandia, NY 11749
By:    Karen M. Berberich, Esq.

**TIERNEY & TIERNEY, ESQS.**
Attorneys for Krzystof Mars and Dorota Mars
409 Route 112
Port Jefferson Station, NY 11776
By:    Stephen A. Ruland, Esq.

**LAW OFFICE OF CORY H. MORRIS**
Attorneys for the Ursula Moore and Willie Moore
135 Pinelawn Road, Suite 250s
Melville, NY 11747
By:    Cory H. Morris, Esq.
          Victor John Yannacone, Jr., Esq.

**HURLEY, Senior District Judge:**

## INTRODUCTION

Plaintiff Allstate Vehicle and Property Insurance Company ("Allstate") brings this action against the captioned Defendants for a declaratory judgment that it is not obligated to defend or indemnify M.M., the minor son of its insureds, Defendants Krysztof and Dorota Mars (the "Mars"), in an underlying action brought against him[1] by Defendants Willie and Ursula Moore on behalf of their minor children D.W.M. and D.D.M. (the "Moores," and together with the Mars, "Defendants").  Presently before the Court is Allstate's motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  [DE 28].  For the reasons set forth below, Allstate's motion is GRANTED.

## BACKGROUND

The following facts from the Amended Complaint and materials properly considered on Allstate's motion are taken as true for the purposes of this Order and are construed in a light most favorable to the Defendants, the non-movants.  *Hayden v. Paterson*, 594 F.3d 150, 160–61 (2d Cir. 2010); *Faison v. Maccarone*, 2012 WL 681812, at *1 (E.D.N.Y. Mar. 1, 2012) (Bianco, J.).

In the underlying action, *D.W.M. ex rel. Moore v. St. Mary School*, No. 2:18-cv-3099 (E.D.N.Y.) (the "Underlying Action"), the Moores allege M.M. cyber-bullied his classmates D.W.M. and D.D.M. with racist and threatening photographs, creating a

---

[1]   M.M., by his parents and natural guardians Krysztof and Dorota Mars, was one of several defendants initially named in the Underlying Action.  Of those remaining in that case, M.M. is only one relevant here.

situation which their school subsequently failed to remedy.  (Am. Compl. ¶¶ 15–17 ("AC") [DE 16]).  The Underlying Action Complaint asserted causes of action based on 42 U.S.C. §§ 1981, 1983, 1985, 1986, 2000a, 2000d, as well as New York state common law negligence, intentional infliction of emotional distress ("IIED"), negligent infliction of emotional distress, prima facie tort, and breach of contract.  (*Id.* ¶ 18; Re-Refiled Second Am. Verified Compl. ¶¶ 168–291 ("Underlying Action Compl."), Underlying Action [DE 27]).  The Mars were named defendants individually and as parents of infant M.M.  Underlying Action Compl.

Pursuant to a House and Home insurance policy (Form AVP117) (the "Policy"), (Ex. E to AC), Allstate has been defending the Mars in the Underlying Action subject to a partial denial and disclaimer letter sent June 25, 2018, (Ex. B to AC).  The Policy provides coverage for "damages which an insured person becomes legally obligated to pay because of bodily injury or property damages arising from an occurrence to which this policy applies," which does not include "bodily injury or property damage intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any insured person."  (Ex. E at 39[2] to AC).  "Bodily injury" means, in relevant part, "physical harm to the body, including sickness or disease, and resulting death." (*Id.* at 22).  "Occurrence" means "an accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in bodily injury or property damage." (*Id.*).

---

[2]     Page numbers refer to those listed in the docket entry header.

In the June 25, 2018 letter, Allstate advised the Mars that the Policy provided "no coverage" for all but two of the Underlying Action's causes of action:

> [T]hey do not allege bodily injury or property damage as those terms are defined in the policy. Accordingly, none of the remaining causes of action constitute an occurrence as that term is defined in the policy. Furthermore, with [two] exception[s] . . . , the remaining causes of action all allege intentional conduct by the insureds . . . [and are] barred by the exclusion for intentional/criminal acts.

(Ex. B at 6 to AC). Allstate nevertheless agreed to defend the Mars because at least one cause of action triggered coverage – though Allstate made clear the Policy obligated payment only for damages from physical harm caused by negligence. (*Id.* at 6–7).

On August 21, 2019, the Court in the Underlying Action dismissed all causes of action against the Mars individually and all causes of action, save one, against them as the parents of their son, M.M. (AC ¶¶ 20–22; *D.W.M. ex rel. Moore v. St. Mary Sch.*, 2019 WL 4038410, at *18 (E.D.N.Y. Aug. 27, 2019)). Only the IIED claim survived against M.M., *id.*, prompting Allstate to send a second letter on February 26, 2020 denying coverage. (Ex. D to AC). Allstate contends the Moores' IIED claim "does not allege bodily injury" as defined by the Policy, does not reflect "accidental conduct," and trips the Policy's "intentional acts exclusion." (*Id.*). Allstate then instituted this declaratory judgment action on March 3, 2020, seeking a declaration that it has no duty to defend or indemnify the Mars. [DE 1]. Allstate moved for judgment on the pleadings on August 28, 2020. [DE 28].

## LEGAL STANDARD

The standard for evaluating a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is the same as the standard for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Karedes v. Ackerley Group, Inc.*, 423 F.3d 107, 113 (2d Cir. 2005). In deciding a Rule 12(b)(6) motion to dismiss, the Court applies a "plausibility standard," which is guided by "[t]wo working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)); *accord Harris v. Mills*, 572 F.3d 66, 71–72 (2d Cir. 2009). First, although the Court must accept all allegations as true, this "tenet" is "inapplicable to legal conclusions"; thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *accord Harris*, 572 F.3d at 72. Second, only complaints that state a "plausible claim for relief" can survive a Rule 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 679. Determining whether a complaint does so is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*; *accord Harris*, 572 F.3d at 72.

In making its determination, the Court is confined to "the allegations contained within the four corners of [the] complaint." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 71 (2d Cir. 1998). However, this has been interpreted broadly to include any document attached to the complaint, any statements or documents incorporated in the complaint by reference, any document on which the complaint heavily relies, and anything of which judicial notice may be taken. *See Chambers v.*

*Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (citations omitted); *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991).

## DISCUSSION

"[A] federal court sitting in diversity jurisdiction applies the choice of law rules of the forum state," here New York. *AEI Life LLC v. Lincoln Benefit Co.*, 892 F.3d 126, 132 (2d Cir. 2018). As the Court must interpret a liability insurance contract, New York choice of law rules dictate application of "the substantive law of 'the jurisdiction with the most significant relationship to the transaction and the parties [which] generally [is] the jurisdiction which the parties understood was to be the principal location of the insured risk.'" *U.S. Underwriters Ins. Co. v. Image By J & K, LLC*, 335 F. Supp. 3d 321, 333 n.3 (E.D.N.Y. 2018) (alteration in original) (quoting *In re Liquidation of Midland Ins. Co.*, 16 N.Y.3d 546, 544, 947 N.E.2d 1174, 923 N.Y.S.2d 396 (2011)). The parties agree that New York law governs. Allstate Mem. at 5–6 [DE 28-1]; *e.g.*, Mars Opp. at 4 [DE 29] ("New York case law is clear . . . ."); Moore Opp. at 10 [DE 30] (reciting "decisional law" from the New York Court of Appeals). The Court concurs: "Under New York law, questions regarding an insurer's duties in respect to events that occurred in New York are governed by New York law." *U.S. Underwriters Ins. Co. v. Beckford*, 1998 WL 23754, at *2 (E.D.N.Y. Jan. 20, 1998) (citing *U.S. Underwriters Ins. Co. v. Congregation B'nai Israel*, 900 F. Supp. 641, 644 n.2 (E.D.N.Y. 1995)). Defendants live in New York state, their children attend a Catholic school in New York, "all of the acts and/or omissions attributed to M.M. are

alleged to have occurred in New York," and the Policy "was written in New York, for risks located in New York." *See* Allstate Mem. at 6.

Courts applying New York law interpret insurance policies "according to general rules of contract interpretation." *Olin Corp. v. Am. Home Assur. Co.*, 704 F.3d 89, 98 (2d Cir. 2012). As such, "'words and phrases . . . should be given their plain meaning,' and the contract 'should be construed so as to give full meaning and effect to all of its provisions.'" *Shaw Group, Inc. v. Triplefine Int'l Corp.,* 322 F.3d 115, 121 (2d Cir. 2003) (ellipses in original); *White v. Cont'l Cas. Co.*, 9 N.Y.3d 264, 267, 878 N.E.2d 1019, 848 N.Y.S.2d 603 (N.Y. 2007); *Consol. Edison Co. v. Allstate Ins. Co.*, 98 N.Y.2d 208, 221–22, 774 N.E.2d 687, 746 N.Y.S.2d 622 (N.Y. 2002).

The Court (i) begins with whether the Policy affords coverage for the IIED claim, (ii) addresses Defendants' untimely disclaimer argument, and (iii) finishes by discussing Defendants' other arguments.

## I.    Coverage

Allstate must continue to defend and indemnify if the Mars face liability for damages due to "bodily injury . . . arising from an occurrence to which" the Policy applies, absent a Policy exclusion.[3] Ex. E at 39 to AC. This coverage inquiry is three-fold: (a) whether IIED inflicted Policy-defined "bodily injury," (b) whether the IIED constituted a Policy-defined "occurrence," and (c) whether the Policy

---

[3]    Defendants do not argue that the Underlying Action involves any "property damage."

nevertheless excludes coverage for IIED.  Allstate also seeks (d) a declaration that the Policy does not cover punitive damages.

### A.  Bodily Injury

The Policy limits the term "bodily injury" to "*physical* harm."  Ex. E at 22 to AC (emphasis added).  But even so confined, the definition encompasses the Moores' pleaded injuries traceable to IIED.  Indeed, their Complaint in the Underlying Action specifically alleges "physical harm" resulting from the Mars' IIED.  Underlying Action Compl. ¶¶ 278, 293–94.

Allstate places too much emphasis on the tort's title: the intentional infliction of *emotional* distress.  *See* Allstate Mem. at 8–10.  Though unnecessary to plead an IIED claim, New York law recognizes that IIED *may also* result in physical injury. *AA Senior Rel. Assoc. v. Hillock, LLC*, 52 Misc. 3d 1216(A), 43 N.Y.S.3d 766 (Table) (N.Y. Sup. Ct., Queens Cnty. 2016) ("[T]he complaint sufficiently sets forth a cause of action for . . . intentional infliction of emotional distress based upon plaintiffs suffering physical injuries . . . ."); *Shmueli v. Corcoran Grp.*, 9 Misc. 3d 589, 596, 802 N.Y.S.2d 871 (N.Y. Sup. Ct., N.Y. Cnty. 2005) (stating that IIED "may be actionable if it is shown to have caused physical harm."); *Lane v. Marine Midland Bank, N.A.*, 112 Misc.2d 200, 203, 446 N.Y.S.2d 873 (N.Y. Sup. Ct., Erie Cnty. 1982) (denying a motion to dismiss IIED claims resulting in "physical, emotional and other injuries"); *Callarama v. Assocs. Disc. Corp. of Del.*, 69 Misc. 2d 287, 290, 329 N.Y.S.2d 711 (N.Y. Sup. Ct., Monroe Cnty. 1972) ("It will be for the trier of the facts here to determine . . . whether in fact [defendant's conduct] was the proximate cause of the emotional

distress and physical injuries claimed by plaintiff.  The conduct must be more than mere insults, indignities, threats and annoyances and must be so shocking and outrageous as to exceed all reasonable bounds of decency." (internal citations omitted)); *Cauverien v. De Metz*, 20 Misc. 2d 144, 147, 188 N.Y.S.2d 627 (N.Y. Sup. Ct., N.Y. Cnty. 1959) ("Where the defendant's act is intentional, recovery has been allowed for emotional distress and physical harm resulting therefrom, even in the absence of direct physical injury." (citing *Garrison v. Sun Printing & Publ'g Ass'n*, 207 N.Y. 1, 100 N.E. 430 (N.Y. 1912)).

Therefore, the Moores' contention that M.M.'s IIED inflicted "physical harm" upon D.W.M constitutes "bodily injury" as defined by the Policy.  Accordingly, this first inquiry does not rule out coverage.

## B.    Occurrence

A bodily injury, however, is not enough; only those resulting from an "occurrence" are covered by the Policy.  Ex. E at 39 to AC.  The Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period."  *Id.* at 22.  The Policy does not define the term "accident."  *See id.*

In the absence of contractual definition, the New York Court of Appeals has held the ordinary person's understanding of "accident" depends on context.  *Michaels v. City of Buffalo*, 85 N.Y.2d 754, 757–58, 651 N.E.2d 1272, 628 N.Y.S.2d 253 (N.Y. 1995) (citing *Miller v. Cont'l Ins. Co.*, 40 N.Y.2d 675, 676, 358 N.E.2d 258, 389 N.Y.S.2d 565 (N.Y. 1976)).  In a life insurance policy, "accident" means "an

unexpected, unusual, and unforeseen" event. *Miller*, 40 N.Y.2d at 677. In an automobile insurance policy, it "refers to an event involving some trauma, violence, or casualty, or application of external force in which the auto is involved." *Michaels*, 85 N.Y.2d at 758. "[T]he general rule for applying 'accident' . . . causation coverage looks to the insured defendant to determine whether the causal event was fortuitous or not." *Id.* at 759 (internal quotation marks omitted) (quoting *Vermont Mut. Ins. Co. v. Malcolm*, 128 N.H. 521, 523, 517 A.2d 800 (N.H. 1986) (Souter, J.)). The "fortuitous" formulation, made in reference to a homeowner's insurance policy, came from future United States Supreme Court Associate Justice David Souter, during his time on the Supreme Court of New Hampshire. *See Vermont Mut. Ins. Co.*, 128 N.H. at 522. The New York Court of Appeals shares his view: "[T]he requirement of a fortuitous loss is a necessary element of insurance policies based on either an 'accident' or 'occurrence.'" *Consol. Edison Co.*, 98 N.Y.2d at 220.

Yet "[a]ccidental results can flow from intentional acts. The damage in question may be unintended even though the original act or acts leading to the damage were intentional." *Allegany Co-op. Ins. Co. v. Kohorst*, 254 A.D.2d 744, 678 N.Y.S.2d 424 (N.Y. App. Div., 4th Dep't 1998) (internal quotation marks omitted); *see McGroarty v. Great Am. Ins. Co.*, 36 N.Y.2d 358, 364, 329 N.E.2d 172, 368 N.Y.S.2d 485 (N.Y. 1975) ("[I]t is not legally impossible to find accidental results flowing from intentional causes, *i.e.*, that the resulting damage was unintended although the original act or acts leading to the damage were intentional."); *Graphic Arts Mut. Ins. Co. v. Pine Bush Centr. Sch. Dist.*, 159 A.D.3d 769, 773, 73 N.Y.S.3d 241 (N.Y. App.

Div., 2d Dep't 2018).   But, "generally speaking," "accidental" is "the opposite of 'intentional' or 'expected.'"   *Technicon Elecs. Corp. v. Am. Home Assur. Co.*, 141 A.D.2d 124, 134, 533 N.Y.S.2d 91 (N.Y. App. Div., 2d Dep't 1988), *aff'd*, 74 N.Y.2d 66, 542 N.E.2d 1048 (1989).

As alleged in the Underlying Action Complaint, M.M. intended both (1) to share the threatening images, *e.g.*, Underlying Action Compl. ¶ 76 ("M.M. reposted images to his channel and one or more other channels."), ¶ 110 ("M.M. . . . transmitted one or more of the cyberassault images . . . through a gmail account associated with St. Mary School under the guise that it was for school project."), and (2) to inflict emotional distress upon D.W.M., *id.* ¶ 93 ("[T]he cyberassault image . . . is generally understood among adolescent boys to be an overt demand that the recipient . . . commit suicide."), ¶ 99 ("To adolescent boys in the American culture, any symbol associated with the Ku Klux Klan (KKK) almost invariably means lawlessness and terrorism—murder, arson, and mutilation—and instilled in its victim Plaintiff D.W.M. . . . [a] well-grounded fear of physical violence."), ¶ 104 ("[T]he second cyberassault image . . . can have only one meaning.  It is a direct and overt threat of violent death directed at Plaintiff D.W.M. just because he is a black student at St. Mary School."), ¶ 106 ("[T]he cyberassault image . . . is generally accepted among adolescent boys to mean that the body of Plaintiff D.W.M. will be disposed of and can eventually be found in a trash can.").  The Court's decision on the Underlying Action's motion to dismiss reached the same findings: (1) "M.M. . . . reposted the images to [his] *Discord* channels as well as to one or more other channels.

M.M. subsequently transmitted one or more of the cyberassault images through an email account associated with St. Mary, and claimed the images were for a school project"; and (2) "[T]he alleged facts suggest an intent to cause severe emotional distress given that these images were supposedly sent to Plaintiff D.W.M. to encourage him to commit suicide, and to threaten death by lynching, hanging, and other torture." *D.W.M. ex rel. Moore*, 2019 WL 4038410, at *1, *15 (internal citations omitted).

There was nothing "fortuitous" about M.M.'s actions or its resultant harm to D.W.M.   D.W.M.'s damages "are the intended result which flows directly and immediately from [M.M.'s] intentional act, rather than arising out of a chain of unintended though foreseeable events that occurred after the intentional act."  *See Mary & Alice Ford Nursing Home Co. v. Fireman's Ins. Co. of Newark, N.J.*, 86 A.D.2d 736, 737, 446 N.Y.S.2d 599 (N.Y. App. Div., 3d Dep't), *aff'd sub nom.* 57 N.Y.2d 656, 439 N.E.2d 883 (N.Y. 1982).   The IIED claim involved no "accident"—thus no "occurrence" under the Policy—and therefore fails to trigger coverage.   Allstate has no duty to defend or indemnify.  *See, e.g.*, *First Fin. Ins. Co. v. XLNT Recovery Specialist, Inc.*, 2000 WL 943499, at *4 (S.D.N.Y. July 7, 2000) ("The Mahabirs' claims that XLNT's employees acted 'with intent to injure,' and committed . . . intentional infliction of emotional distress . . . are thus not covered by the policy."); *Servidone Const. Corp. v. Sec. Ins. Co. of Hartford*, 64 N.Y.2d 419, 423, 477 N.E.2d 441, 488 N.Y.S.2d 139 (N.Y. 1985) ("[T]here can be no duty to indemnify unless there is first a covered loss."); *Rinaldi v. Wakmal*, 183 A.D.3d 652, 123 N.Y.S.3d 156, 159 (N.Y. App.

Div., 2d Dep't 2020) ("[T]he assault alleged therein was an intentional act, which did not constitute an "occurrence" within the meaning of Utica's policy. . . .   Since there was, accordingly, no legal basis upon which Progressive or Utica could be held liable for coverage, they had no obligation to defend or indemnify Rinaldi.").

### C.   Intentional Acts Exclusion

Even if the Court construes the situation as an "occurrence," the Policy's exclusion for intentional acts frees Allstate from any coverage obligation.  Under the exclusion, Allstate denies coverage for "bodily injury or property damage intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any insured person."  Ex. E at 39 to AC.  As explained above, M.M.'s actions—distributing the hateful imagery—were intentional and with the intent, or at the very least were reasonably expected, to cause D.W.M. harm.  Underlying Action Compl. ¶¶ 76, 93, 99, 104, 106, 110; *see D.W.M. ex rel. Moore*, 2019 WL 4038410, at *1, *15.

Defendants' argument that a jury may find M.M. liable for IIED for his reckless—but not intentional—conduct is unpersuasive.  The Court must "look[] to the facts alleged in the [] Complaint, and not to the legal characterizations thereof." *Transamerica Ins. Grp. v. Rubens*, 1999 WL 673338, at *6 (S.D.N.Y. 1999); *see Allstate Ins. Co. v. Mugavero*, 79 N.Y.2d 153, 162, 589 N.E.2d 365, 581 N.Y.S.2d 142 (N.Y. 1992) ("It is settled law that an insurer must afford its insured a defense unless it can show that the allegations of the complaint put it solely within the policy exclusion.  But the analysis depends on the facts which are pleaded, not the

conclusory assertions." (internal citations omitted)); *Cnty. of Columbia v. Cont'l Ins. Co.*, 189 A.D.2d 391, 394, 595 N.Y.S.2d 988 (N.Y. App. Div., 3d Dep't 1993) ("That is not to say, however, that we are required to accept [plaintiff's] legal characterization of the causes of action alleged in the complaint."), *aff'd*, 83 N.Y.2d 618, 634 N.E.2d 946, 612 N.Y.S.2d 345 (N.Y. 1994).

The Underlying Action clearly asserts intentional, not mere reckless, conduct. Nothing suggests Allstate "has actual knowledge of facts establishing a reasonable possibility of coverage" by virtue of recklessness. *See Fitzpatrick v. Am. Honda Motor Co.*, 78 N.Y.2d 61, 67, 575 N.E.2d 90, 571 N.Y.S.2d 672 (N.Y. 1991). And, under New York law, "[c]laims of recklessness do not 'change the gravamen of the complaint from one alleging intentional acts and violations of Federal . . . statutes' to one involving reckless conduct." *Sidney Frank Importing Co. v. Farmington Cas. Co.*, 1999 WL 173263, at *6 (S.D.N.Y. Mar. 26, 1999) (ellipses in original) (quoting *Bd. of Educ. of the East Syracuse–Minoa Centr. Sch. Dist. v. Cont'l Ins. Co.*, 198 A.D.2d 816, 817, 604 N.Y.S.2d 399 (N.Y. App. Div., 4th Dep't 1993)), *aff'd*, 199 F.3d 1323 (2d Cir. 1999)).

The Moores' IIED claim against M.M. reflects intentional conduct, coverage for which is denied pursuant to the Policy's exclusions, thereby extinguishing Allstate's duty to defend or indemnify. *Brandstetter v. USAA Cas. Ins. Co.*, 163 A.D.2d 349, 350, 558 N.Y.S.2d 562 (N.Y. App. Div., 2d Dep't 1990) ("Since the plaintiff seeks coverage from USAA for actions that are allegedly intentional, the exclusionary clauses apply as to both of USAA's policies, and USAA owes no duty to defend or indemnify the plaintiff in the underlying action.").

### D.     Punitive Damages

Allstate seeks a declaration that the Policy affords no coverage for punitive damages, should they be imposed against M.M.  AC ¶¶ 41–44.  New York law holds that "an insurer may not indemnify an insured for a punitive damages award, and a policy provision purporting to provide such coverage is unenforceable.  *J.P. Morgan Sec. Inc. v. Vigilant Ins. Co.*, 21 N.Y.3d 324, 334, 992 N.E.2d 1076, 970 N.Y.S.2d 733 (N.Y. 2013) (citing *Zurich Ins. Co. v Shearson Lehman Hutton*, 84 N.Y.2d 309, 316–17, 642 N.E.2d 1065, 618 N.Y.S.2d 609 (N.Y. 1994)).  Otherwise, "the purpose of punitive damages, which is to punish and to deter others from acting similarly," would be defeated.  *Hartford Acc. & Indem. Co. v. Vill. of Hempstead*, 48 N.Y.2d 218, 226, 397 N.E.2d 737, 422 N.Y.S.2d 47 (N.Y. 1979).  Therefore, Allstate is not responsible for punitive damages.

## II.    Timely Disclaimer

Defendants ask the Court to apply either the equitable doctrine of laches or the statutory requirement in New York Insurance Law § 3420(d)(2) and find that Allstate failed to timely disclaim coverage.  Neither basis is applicable.

New York Insurance Law § 3420(d)(2)'s application depends on whether the IIED conduct is not an "occurrence" (*i.e.*, the Policy does not trigger) or whether the Policy's exclusions activate (*i.e.*, the Policy triggers, but coverage is barred).  Because IIED claim does not reflect an "occurrence," and the claim does not trigger the Policy's coverage, *see supra* Discussion Section I.B,  section 3420(d) does not apply, N.Y. Ins. Law § 3420(d)(1)(A) ("This paragraph applies with respect to a liability policy that

provides coverage with respect to a claim arising out of the death or bodily injury of any person . . . ."). When "the insurance policy does not contemplate coverage in the first instance, . . . requiring payment of a claim upon failure to timely disclaim would create coverage where it never existed." *Worcester Ins. Co. v. Bettenhauser*, 95 N.Y.2d 185, 188–89, 734 N.E.2d 745, 712 N.Y.S.2d 433 (N.Y. 2000).

But if the Policy triggers, regardless of the intentional acts exclusion, Allstate would have to timely disclaim. *Id.*; *Handelsman v Sea Ins. Co.*, 85 N.Y.2d 96, 102, 647 N.E.2d 1258, 623 N.Y.S.2d 750 (N.Y. 1994). "Failure to comply with section 3420(d) precludes denial of coverage based on a policy exclusion." *Worcester Ins. Co.*, 95 N.Y.2d at 188–89. Allstate properly did so with its June 25, 2018 letter, sent ten days after the Moores served the Mars in the Underlying Action. Ex. B to AC; Docket Entries 34 and 35, Underlying Action. Allstate's letter unequivocally denied and disclaimed coverage due to the absence of "bodily injury" and the intentional conduct of its insured. Ex. B to AC; *see Gen. Acc. Ins. Grp. v. Cirucci*, 46 N.Y.2d 862, 864, 387 N.E.2d 223, 225 (N.Y. 1979) ("[T]he notice of disclaimer must promptly apprise the claimant with a high degree of specificity of the ground or grounds on which the disclaimer is predicated."). Therefore New York Insurance Law § 3420(d) does not require Allstate to defend or indemnify the Mars.

The same reasoning applies to laches. "[W]here, as here, 'the denial of the claim is based upon lack of coverage, estoppel may not be used to create coverage regardless of whether or not the insurance company was timely is issuing its disclaimer.'" *In re U.S. Speciality Ins. Co. (Denardo)*, 151 A.D.3d 1520, 1524, 57

N.Y.S.3d 743 (N.Y. App. Div., 3d Dep't 2017) (quoting *In re Liberty Mut. Ins. Co. v. McDonald*, 6 A.D.3d 614, 615, 775 N.Y.S.2d 83 (N.Y. App. Div., 2d Dep't 2004). And even if there is coverage, laches is unwarranted because Allstate disclaimed coverage ten days after notification of the claims against its insureds. *E.g.*, *Mlodozeniec v. Trio Asbestos Removal Corp.*, 66 A.D.3d 1174, 1176, 887 N.Y.S.2d 339 (N.Y. App. Div., 3d Dep't 2009) ("SIF did not delay in disclaiming coverage and, therefore, the principles of laches and estoppel do not apply.").

Defendants' reliance on Allstate's five-month delay in sending its second letter following the Court's August 27, 2019 Order is misplaced. The New York Court of Appeals has "made clear" that "'timeliness of an insurer's disclaimer is measured from the point in time when the insurer first learns of the grounds for disclaimer of liability or denial of coverage.'" *First Fin. Ins. Co. v. Jetco Contracting Corp.*, 1 N.Y.3d 64, 68–69, 801 N.E.2d 835, 769 N.Y.S.2d 459 (N.Y. 2003) (quoting *In re Allcity Ins. Co. (Jimenez)*, 78 N.Y.2d 1054, 1056, 581 N.E.2d 1342, 576 N.Y.S.2d 87 (N.Y. 1991)). Allstate became aware of the grounds for disclaimer when it reviewed the Complaint in the Underlying Action and expressed those grounds ten days later in its June 25, 2018 letter. Ex. B to AC. Allstate nevertheless defended the Mars due to the existence of covered claims, *see id.*, and when the Court's August 27, 2019 Order narrowed the issues to those previously disclaimed, Allstate advised that the Policy required no further defense of its insureds. *See* Ex. D to AC. This sequence of events does not run afoul of New York Insurance Law § 3420(d)(2) nor warrant the imposition of laches.

### III.   Remaining Arguments

The two remaining arguments, both raised only by the Moores, can be quickly disposed.  First, the Moores purport to argue that "Allstate is acting in bad faith by attempting to disclaim its obligation to defend" the Mars.  Moore Opp. at 13 (capitalization omitted).  Yet they never cite a bad faith standard nor point to indicia of bad faith.  There is no legal argument—the term "bad faith" appears only in the heading.  The Moores have "simply failed to support [their] argument with any meaningful measure of factual or legal argument.  Courts need not consider cursory arguments of this kind, and the Court declines to do so here."  *Herbert v. Architect of Capitol*, 839 F. Supp. 2d 284, 298 (D.D.C. 2012); *see Olivier v. Cnty. of Rockland*, 2019 WL 2502349, at *22 n.32 (S.D.N.Y. June 17, 2019).

To the extent the Moores instead argue that Allstate's motion is "premature" because "the cause of action in the underlying Complaint can have different reasonable interpretations beyond an intentional act and emotional damage," the Court is not persuaded.  *See* Moore Opp. at 14–15.  Under New York law, "an insurance provider's duty to defend is determined solely by comparing the allegations on the face of the underlying complaint(s) to the terms of the policy."  *Fed. Ins. Co. v. Weinstein*, 2019 WL 1407455, at *3 (S.D.N.Y. Mar. 28, 2019) (citing *Euchner-USA, Inc. v. Hartford Cas. Ins. Co.*, 754 F.3d 136, 140 (2d Cir. 2014)); *Servidone Const. Corp.*, 64 N.Y.2d at 424.  And, as to the duty to indemnify, "holding the insurer liable to indemnify on the mere 'possibility' of coverage perceived from the face of the

complaint" would "enlarge[] the bargained-for coverage" which the Court "cannot do." *Servidone Const. Corp.*, 64 N.Y.2d at 424.

Second, the Moores' suggestion that their negligent infliction of emotional distress ("NIED") cause of action survived the Court's August 27, 2019 Order, and thus imposes a duty to defend, is without merit.  *See* Moore Opp. at 18–19.  The Order is clear: "Plaintiffs' NIED claim is dismissed against . . . Krzysztof and Dorota Mars, individually and as parents of infant M.M.," *i.e.*, Allstate's insureds.[4]  *D.W.M. ex rel. Moore*, 2019 WL 4038410, at \*18.  And early in the Moores' brief, they agree: "In its August 27, 2019 decision this honorable Court *only* permitted the cause of action alleging intentional infliction of emotional distress to go forward as to" the Mars as parents of infant M.M.  Moore Opp. at 14 (emphasis added).

## CONCLUSION

While Allstate has been defending the Mars in the Underlying Action pursuant to certain causes of action triggering the Policy's coverage, it has no obligation to continue to do so.  The Court's August 27, 2019 Order narrowed the Underlying Action's claims to those Allstate has denied and disclaimed Policy coverage from the outset.  *See* Exs. B & C to AC.  For the reasons discussed above, Allstate's motion for

---

[4]    Dismissing the claim against the Mars "as parents of infant M.M" constitutes a dismissal of claims against the infant M.M.  *See* Fed. R. Civ. P. 17(c).  "The complaint makes abundantly clear that" M.M. is a defendant in his "own right" and that the Mars act as his "representative since, as [a] minor[], [he] lack[s] capacity to [defend]."  *See generally Kedra v. City of Philadelphia*, 454 F. Supp. 652, 660 (E.D. Pa. 1978); Underlying Action Compl. Caption & ¶¶ 64–65 (suing the infant defendants "by their respective parents and natural guardians").

judgment on the pleadings is GRANTED.  The Clerk of Court is respectfully directed

to enter judgment declaring:

1.     Allstate is not contractually obligated to provide insurance coverage under the Policy to the Mars as parents of infant M.M. in the Underlying Action;

2.     Allstate is not contractually obligated to defend the Mars as parents of infant M.M. in the Underlying Action;

3.     Allstate is not contractually obligated to continue to pay legal costs for the defense of the Mars as parents of infant M.M. in the Underlying Action;

4.     Counsel retained to defend the Mars as parents of infant M.M. in the Underlying Action can withdraw as counsel;

5.     Allstate is not contractually obligated to indemnify the Mars as parents of infant M.M. in the Underlying Action.

Once entered, the Clerk of Court shall terminate the action.

**SO ORDERED.**

Dated: Central Islip, New York          s/ Denis R. Hurley
       April 12, 2021               Denis R. Hurley
                                         United States District Judge